LOUIS R. AND ANNETTE C. TOMBURELLO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tomburello v. Commissioner
Docket No. 10301-85
United States Tax Court
T.C. Memo 1991-482; 1991 Tax Ct. Memo LEXIS 531; 62 T.C.M. (CCH) 863; T.C.M. (RIA) 91482; September 26, 1991, Filed *531 Decision will be entered under Rule 155. Louis R. and Annette C. Tomburello, pro se. David W. Sorensen, for the respondent. GALLOWAY, Special Trial Judge. GALLOWAY
MEMORANDUM OPINION This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
By notice of deficiency dated January 28, 1985, respondent determined a deficiency of $ 5,615 in petitioners' 1981 Federal income tax and additions to tax under section 6653(a)(1) and (2) in the respective amounts of $ 280.76 and 50 percent of the interest due on the amount of $ 5,615. The issues for decision are: (1) Whether petitioners underreported toke income on their 1981 joint tax return; (2) whether petitioner Annette C. Tomburello is entitled to relief as an innocent spouse pursuant to section 6013(e); (3) whether petitioners are liable *532 for additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations; and (4) whether petitioners should pay a penalty to the United States under section 6673(a). This case was one of a group of assigned cases called at a pretrial session of the Court held at Carson City, Nevada. The cases contain common questions of fact or law and are among the remaining unresolved cases which arose from a toke compliance program initiated by respondent in Nevada in 1982. (An explanation of respondent's toke compliance program is found in , T.C.M. (RIA) 90168). Petitioners resided in Reno, Nevada, when they filed their petition. Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. Background
Petitioners have been before this Court previously with respect to the primary issue in dispute, i.e., whether petitioners underreported their toke income. The prior year involved was 1980. See , affd. without published opinion . In , we held that unreported "tokes" (tips) received by petitioner Louis R. Tomburello as a "21" card dealer constituted taxable income. We first consider the following procedural issues which Mr. Tomburello raised for the first time at trial: (1) That this Court lacks jurisdiction over the subject matter as "tips or tokes includable in gross income are subject to employment taxes"; and (2) the appointment of a Special Trial Judge to hear this case prejudiced petitioners' "right to object to the handling of this case by a judge who has not been duly appointed by the President and confirmed by Congress to be competent in relation to complex legal issues and judicial procedures." Petitioners' argument as to employment taxes and this Court's lack of jurisdiction is groundless. The subject matter of this case involves underreported toke income, not employment taxes. Petitioners' challenge to the appointment of a special trial judge to hear this case must also be rejected. The authority of the Chief Judge of this Court to appoint special trial judges and to assign them to any Tax Court proceeding, regardless of complexity or amount, *534 for hearing and preparation of proposed findings and written opinion, was recently upheld by the Supreme Court in . We turn now to the substantive issues in this case. 1. Underreported Toke Income
During 1981, Louis R. Tomburello (petitioner) was employed as a "21" card dealer on the swing shift at the MGM-Grand-Reno Hotel and Casino (MGM) in Reno, Nevada. MGM dealers normally worked eight-hour shifts during 1981. Petitioner was paid for approximately 2,100 hours of work at MGM in 1981. In addition to his salary paid by MGM, petitioner received tips from the players at the "21" tables. These tips were in the form of tokes. "Tokes" are casino chips (house checks) that players either give to the card dealers directly or place along with their own bets as bets for the dealers. See . The tokes received by the "21" dealers on each shift at MGM were pooled and divided up evenly among all the dealers who worked that shift. Petitioner does not have a written diary, log, or other contemporaneously kept accounting of toke income he received during 1981. *535 He did not participate in respondent's toke compliance program and did not report his receipt of tokes to his employer. On their 1981 tax return, petitioner and Mrs. Tomburello reported as income his wages from MGM totaling $ 14,550.64. Petitioner and Mrs. Tomburello did not report petitioner's toke income on the return. Mrs. Tomburello was unemployed during the year in issue. Respondent reconstructed petitioner's toke income through the use of records of the daily toke splits for the swing shifts, for 1982 and 1983. Using this information, respondent computed an average hourly toke rate of $ 7.90 for 1982 and $ 7.92 for 1983. As the rates were reasonably constant for each year, respondent applied the 1982 hourly toke rate of $ 7.90 to 1981. In his notice of deficiency, respondent determined that petitioner realized $ 22,575 in toke income during 1981. [2]
It is well established that tokes *536 constitute compensation for services rendered and are includable in gross income under section 61. , affd. without published opinion sub nom. . Taxpayers are required to maintain sufficient records to establish their correct tax liability. Sec. 6001. If a taxpayer fails to keep the required records or the records maintained do not clearly reflect income, respondent is authorized by section 446 to compute income in accordance with such method as in his opinion clearly reflects the full amount of income received. . Respondent has great latitude in adopting a method for reconstructing income. . The reconstruction need only be reasonable in light of all the surrounding circumstances. . Utilizing a determinable rate for a given year, and applying it to a prior year where there is no evidence to establish the rate in that prior year, is an acceptable and reasonable method of reconstructing income. Respondent's determinations are presumed correct and the burden is on petitioners to show otherwise. ; Rule 142(a). Petitioner did not challenge the amount of his income determined by respondent's reconstruction. Rather, he confined himself primarily to the argument that tips are gifts from gambling patrons and are not taxable income. This same argument was raised and rejected in petitioner's prior case before this Court. See . Petitioner has failed to satisfy his burden of proving error in respondent's determination of their tip income for 1981. In sustaining respondent on this issue, we reduce petitioner's underreported toke income from $ 22,875 as determined in the notice of deficiency to $ 16,590 to conform to the toke rate established at trial ($ 7.90 hourly tip rate multiplied by 2,100 hours). 2. Innocent Spouse
At trial, petitioner claimed for the first time that Mrs. Tomburello is entitled to innocent spouse relief under section 6013(e). Generally, a husband and wife who file a joint return are jointly and severally liable for the tax due. Sec. 6013(d)(3). *538 However, section 6013(e) relieves an innocent spouse of joint liability if she proves that: (1) A joint return was made for the taxable year; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) she did not know, and had no reason to know, of the substantial understatement when she signed the return; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold the spouse liable for the deficiency in income tax attributable to such substantial understatement. Section 6013(e)(1), as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802. Petitioners have the burden of proof. Rule 142(a). Failure to prove any one of the statutory elements will prevent the spouse from qualifying for relief. . There is no dispute that the first two elements of section 6013(e)(1) have been satisfied. With respect to the element regarding knowledge and reason to know of a substantial understatement, Mrs. Tomburello testified that she knew petitioner was receiving tokes from his employment. She testified *539 that petitioner gave her enough money to pay the rent, utilities, and buy food and clothes for their family during the period involved. Mrs. Tomburello stated that she put this money in a checking account and paid the bills by check. She also stated that petitioner kept cash at home in his "boot" and that she was not allowed to use the money. These payments, the fact that petitioner kept money in his boot, and Mrs. Tomburello's knowledge of petitioner's receipt of tokes at his employment, should have put Mrs. Tomburello on notice of unreported income. A spouse cannot turn a blind eye to facts that might give reason to know of unreported income. . Under these circumstances, Mrs. Tomburello had a duty to inquire. See , affg. . Finally, in view of the benefits inuring to Mrs. Tomburello through her receipt of money from petitioner, we do not believe it would be inequitable to hold Mrs. Tomburello liable for the deficiencies and additions to tax attributable to the 1981 understatements. See . *540 We conclude, on this record, that Mrs. Tomburello has not established that she is entitled to relief under section 6013(e). 3. Negligence
Respondent determined additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations for the year in issue. Failure to keep adequate records of tip income which results in the underpayment of tax supports the imposition of tax under section 6653(a)(1) and (a)(2). . Respondent's determination is presumed correct and petitioner bears the burden of proving otherwise. ; Rule 142(a). Because petitioner understated his tip income, and failed to maintain records which reflect accurately his income as required by section 6001, respondent's determination regarding the additions to tax is sustained. 4. Section 6673 Penalty
Finally, we turn to respondent's motion for a penalty pursuant to section 6673. Whenever it appears to the Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay, that the taxpayer's position in such proceeding is frivolous or *541 groundless, or that the taxpayer unreasonably failed to pursue available administrative remedies, the Court may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000. Sec. 6673(a). [3]
The record in this case establishes that petitioner instituted and maintained this proceeding primarily for delay. At the time this case was tried, petitioner had previously appeared before this Court and was well aware that his arguments were discredited and had been rejected by this Court and the Ninth Circuit Court of Appeals when the case was appealed to that Court. At trial, petitioner's conduct was disruptive. He was frequently argumentative. *542 He continuously raised protester-type arguments and refused to discuss or present evidence concerning the substantive issues determined in the notice of deficiency and disclosed in respondent's trial memorandum. The purpose of section 6673 is to compel a taxpayer to think about his position and to conform his or her conduct to settled principles before he litigates. A petition to the Tax Court is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. . Based upon this record and established law, we conclude that petitioner's position in this matter is both frivolous and groundless and that he instituted and maintained this proceeding primarily for delay. Accordingly, we hold that petitioners are required to pay to the United States a penalty in the amount of $ 4,000. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The amount of unreported toke receipts was based upon 2,100 hours of work multiplied by a toke rate of $ 10.75 per hour.↩
3. The Omnibus Budget Revenue Reconciliation Act of 1989, Pub. L. 101-239, sec. 7731(a), 103 Stat. 2106, 2400 changed the term "damages" to "penalty" and increased the amount which can be imposed from $ 5,000 to $ 25,000. These changes are applicable to positions taken after December 31, 1989, in proceedings which are pending on or commenced after such date.↩